FINLEY v. HALLIBURTON.*

(Circuit Court of Appeals, Eighth Circuit. April 8, 1918.)

No. 5034.

1. APPEAL AND ERROR ⬤�longdash878(1)—FAILURE TO APPEAL—EFFECT.
Where a trust company, which made advances to a lessee to enable her to build on the demised ground, sued the lessee and lessor to foreclose its liens, etc., and the lessor in the same proceeding recovered·for rent due, and foreclosure was ordered, the original decree, not having been appealed from by the lessee, is conclusive as to her, notwithstanding lessor's appeal from the decree in favor of the trust company and a subsequent agreement between parties.

2. JUDGMENT ⬤�longdash843—EQUITABLE ASSIGNMENT.
Where an agreement in effect worked an equitable assignment of a judgment, a court of equity will treat the judgment as assigned, though the formal assignment was not executed.

3. JUDGMENT ⬤�longdash843—ASSIGNMENT—AGREEMENT.
Where a trust company, which advanced money to a lessee of land to enable it to construct a building thereon in accordance with the lease, recovered in a suit against the lessee and lessor, held, that an agreement between the trust company and the lessor, whereby the latter paid the amount of the trust company's recovery, etc., was an equitable assignment of the judgment and claims of the trust company.

4. SUBROGATION ⬤�longdash22—PERSONS ENTITLED TO SUBROGATION.
Where lease required lessee to construct building, and he incurred obligations which it failed to discharge, lessor's rights were not limited to paying off claims and recovering therefor as for rent, but it was merely given such an option; and where trust company had advanced funds to enable lessee to construct a building, lessor, having been compelled, in order to protect property, to pay amount of trust company's recovery, etc., was entitled to be subrogated to its rights.

5. LANDLORD AND TENANT ⬤�longdash96—MERGER OF LEASEHOLD ESTATE.
Where a trust company, which advanced funds to a lessee to enable it to construct a building on the demised premises, recovered judgment, which the lessor paid, receiving an equitable assignment of the judgment, etc., held, that there was no merger as to the leasehold estate which would defeat the rights of the lessor under its purchase.

6. APPEAL AND ERROR ⬤�longdash1073(1)—REVIEW—HARMLESS ERROR.
Judgment of foreclosure against Oklahoma property is not open to objection on the ground that by Rev. Laws Okl. 1910, § 5162, no order of sale could issue until the expiration of six months from its entry, where no sale had occurred, though nearly a year had elapsed.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by the St. Louis Union Trust Company against Dora Finley, formerly Dora Patterson, and Mary E. Halliburton, formerly Mary E. Mellon. From a decree for the Trust Company, the defendant Mellon appealed, and, before the mandate of the Circuit Court of Appeals was remitted to the trial court, she entered into an agreement

---

⬤�longdashFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied July 22, 1918.

with the Trust Company relating to foreclosure. A final decree was entered in accordance with the agreement, and defendant Patterson, who objected, appeals. Affirmed.

Homer N. Boardman, of Oklahoma City, Okl., for appellant.

J. H. Everest, of Oklahoma City, Okl. (R. M. Campbell, of Oklahoma City, Okl., on the brief), for appellee.

Before HOOK, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. This is an appeal from a final decree entered in an action wherein the St. Louis Union Trust Company, hereafter called Trust Company, was plaintiff, and appellant and appellee and others were defendants, and an order entered in said action, subsequent to said final decree, striking the supplemental answer and cross-bill of appellant from the files of said cause. The status of the case at the time the final decree and order above mentioned were entered cannot be understood without some statement as to the prior proceedings in said action.

On November 1, 1909, appellee was the owner in fee of two lots in Oklahoma City, Okl. On said date she leased the same to appellant for the term of 99 years at the yearly rental of $6,000, payable in advance in monthly installments of $500. The lease obligated appellant to erect upon the premises a modern building not less than three stories high in addition to the basement. The building was to cost not less than $40,000, and the erection thereof was to be commenced within one year. Appellant subsequent to the execution of the lease entered into a contract for the erection of a building on the leased premises for the sum of $130,000. Subsequently she borrowed from the Trust Company $75,000, to be used in the erection of the building contracted for, and executed a mortgage, in which appellee joined, whereby they conveyed to the Trust Company as security for the contemplated loan the fee to the lots, as well as the improvements and buildings to be erected thereon. Appellant failed to pay the contractors the full amount due them for the erection of the building, and a mechanic's lien was filed for the balance. In this lien was included the sums due materialmen and subcontractors. The architects also filed a separate lien. The liens were claimed on the leasehold interest of appellant and the building, and not against the fee. The subcontractors also filed separate lien claims. The Trust Company purchased all these claims. Appellant defaulted in the payment of interest on the mortgage debt, and the Trust Company filed its bill of foreclosure, and by a supplemental bill included the claims of the lien creditors.

To the original bill the lien claimants answered, setting up various mechanics' and materialmen's liens. The appellee also answered, and filed a cross-bill, setting up and asserting a lien upon the leasehold interest, the improvements erected thereunder, and the rents and profits for the rent then due her under the terms of the lease above mentioned. She alleged a default in the payment of the rent, and sought a foreclosure of her lien for the amount of the rent and attorney's fees which might be found due, and that her lien be declared prior and

superior to the liens of the mechanics and the Trust Company as to the leasehold interest. The appellant answered, and denied the defaults generally. The case went to trial, and a judgment of foreclosure was rendered in favor of the Trust Company for the amount of its debt, including the amount paid for the liens of the mechanics and materialmen, and in favor of appellee for the amount due her for rent, which was $6,900 and an attorney fee of $1,500. The trial court adjudged the priority of the several claimants to be as follows: First, the Trust Company for the entire sum due under its mortgage; second, the materialmen; and, third, appellee. From this judgment appellee alone prosecuted an appeal to this court.

This court on July 7, 1915, affirmed the judgment of foreclosure, but reversed the decree in regard to the priority of the liens. Before the mandate of this court was remitted to the trial court, appellee entered into the following stipulation and agreement with the Trust Company:

### "Stipulation and Agreement.

"On the 5th of January, 1914, a decree of foreclosure was rendered and filed in the above-entitled cause. Defendant Mary E. Mellon appealed from said decree to the United States Circuit Court of Appeals, which court by its opinion and judgment filed on the 7th day of July, 1915, sustained said appeal to the extent as in said opinion and judgment set forth. A petition for a rehearing of said cause in the United States Circuit Court of Appeals was duly filed by St. Louis Union Trust Company, appellee, and on the 22d day of October, 1915, was denied. An application for a writ of certiorari has been granted by the Supreme Court of the United States upon the application and in favor of St. Louis Union Trust Company, appellee in the Court of Appeals, and petitioner in the Supreme Court of the United States; and said cause is now pending in the Supreme Court of the United States on said writ.

"Since the rendition of the decree and judgment of the United States court at Guthrie above referred to, counsel for St. Louis Union Trust Company in said cause have performed the following services, to wit: (1) They have prepared, submitted, and made oral argument upon their brief in the United States Circuit Court of Appeals; (2) they have prepared and sued out their application for writ of certiorari; and (3) they have prepared and at this time are ready to file their brief in the Supreme Court of the United States. On this date J. H. Everest, Esq., of counsel for Mary E. Mellon, now Mary E. Mellon Halliburton, tenders and offers to pay to St. Louis Union Trust Company the sum of $109,101.80, the same being the amount established by the said judgment on January 5, 1914, in favor of St. Louis Union Trust Company, plus interest thereon to this date, less payments received from time to time by St. Louis Union Trust Company, and agrees to pay court costs accrued and to accrue in this cause in the United States Circuit Court of Appeals and in the Supreme Court of the United States, and all subject to the terms of this stipulation and agreement. The St. Louis Union Trust Company is willing to receive said sum, and does receive the same from J. H. Everest, Esq., upon the terms and conditions set forth herein.

"Counsel for Mrs. Halliburton claim that because of said payment they are on this date entitled to be fully subrogated to all the rights of St. Louis Union Trust Company under the judgment of said District Court of the 5th of January, 1914, as well as under the decree and judgment of the United States Circuit Court of Appeals above referred to, and that the receipt of said sum by the St. Louis Union Trust Company works an equitable assignment of all its right, title, and, interest in and to the same. It is expressly understood between the St. Louis Union Trust Company and Mrs. Halliburton that said sum of money is received by St. Louis Union Trust Company without prejudice to the St. Louis Union Trust Company, or to any of its

rights, and it makes the claim that the receipt of said money does not work an equitable assignment, as claimed by Mrs. Halliburton, because it claims that Mrs. Halliburton has not paid the judgment and costs in full. There is an issue between the parties as to whether the services of counsel for St. Louis Union Trust Company in the Court of Appeals and in the Supreme Court of the United States, and a reasonable value to be placed upon said services, are and should be proper costs in this suit. Mrs. Halliburton insists that the fees of counsel for the Trust Company, as fixed by the said decree of the 5th of January, 1914, were and were intended to be in full payment to said counsel for all services rendered and to be rendered in said cause.

"It is agreed that this statement shall be and shall be construed as a stipulation and agreement between St. Louis Union Trust Company and Mary E. Mellon Halliburton, shall be filed in this cause in the District Court of the United States at Oklahoma City, Okl., shall be submitted to the judge of said court, and that the court will determine:

"First. Whether counsel fees for services rendered to St. Louis Union Trust Company in the United States Circuit Court of Appeals and in the Supreme Court of the United States shall be allowed and are admissible as allowances in addition to the fees allowed counsel for St. Louis Union Trust Company in the foreclosure decree.

"Second. If the court shall determine that counsel are entitled to fees for the further services rendered the St. Louis Union Trust Company, then the court will hear evidence as to the extent of said services, and will fix the amount of said fees, which will be taxed as costs and paid by Mrs. Halliburton as part of the court costs, and the said decree will be revised accordingly.

"If the court shall decide that St. Louis Union Trust Company is not entitled to fees for its counsel, then the said Trust Company will execute a formal assignment of its judgments and of its rights thereunder to Mrs. Halliburton on demand for same. A formal assignment of said judgments will likewise be made if the court shall adjudge that additional counsel fees are payable and the same are paid.

"St. Louis Union Trust Company, Plaintiff,
"By W. F. Wilson, John Tomerlin, and E. E. Buckholts, Its Counsel.
"Mary E. Mellon Halliburton, Defendant,
"By J. H. Everest, R. M. Campbell, Her Counsel.
"Dated January 4, 1917."

On December 15, 1915, the mandate of this court was spread upon the record of the trial court. With the record in this condition the case came before the court on the 9th day of April, 1917, for further proceedings. The court heard and denied the claim of the Trust Company for additional attorney's fees, and continued the cause for further hearing to May 8, 1917. At that time the appellant filed objections to the entering of a final decree and a motion for an order canceling and discharging all liens, charges, and claims paid by appellee under the agreement with the Trust Company. The trial court overruled the objections of appellant to the entering of a final decree, and overruled her motion for a decree canceling and discharging the claims and demands obtained by appellee from the Trust Company, and then proceeded to enter a decree in accordance with the mandate of this court. This decree adjudged the amount then due for rent to be $28,850. After the entering of this decree appellant filed a so-called supplemental answer and cross-bill, which counsel for appellee moved to strike from the files for the reason that said answer and cross-bill wholly failed to state facts sufficient to constitute any defense or for any relief in equity.

[1] On June 12, 1917, this motion to strike came on for hearing and the motion was sustained. The objections of appellant to the entry of the final decree by the trial court on the mandate of this court were the same in substance as those presented in her so-called answer and cross-bill filed after the entry of the decree, and therefore it will only be necessary to consider the facts stated in the answer and cross-bill. Conceding, but not deciding, that appellant had the right to file the cross-bill in the then status of the case, we do not think it will be necessary to state the allegations of the same at length, as the question raised may be considered without doing so. By the answer and cross-bill appellant claimed that the transaction of appellee with the Trust Company, taken in connection with certain provisions of the lease between appellee and appellant, amounted simply to a payment of the claims and not a purchase thereof, and that after the payment of the same the amount paid became so much rent due, to recover which appellee must proceed under the lease, and that the transaction referred to did not give appellee the right of subrogation, so as to enable her to enforce the decree of the trial court in place of the Trust Company.

Appellant seems to have overlooked or ignored the fact that the decree of foreclosure obtained by appellee for the amount of rent due, viz. $28,850, is a valid and existing decree against appellant not affected by any of the questions which are sought to be raised by the so-called answer and cross-bill. The decree entered pursuant to the mandate of this court, so far as the rent due is concerned, only differs from the decree originally entered by the trial court in the amount found due for rent. The original judgment of foreclosure was not appealed from by appellant, and hence it stands as a valid decree of foreclosure against the leasehold interest, including the buildings erected upon the lots, so that, if appellant should be successful in her contention as to the matters now raised, it would in no wise relieve her from the effect of the judgment of foreclosure for the rent due. Appellant is also asking for equitable relief, and while conceding that all the amounts fixed by the decree are due and owing, not a cent is tendered for the purpose of doing equity.

[2, 3] We are clearly of the opinion that the agreement set forth in this opinion between appellee and the Trust Company amounted to an equitable assignment of the judgments and claims of the Trust Company to appellee. It is true that the formal assignment referred to in the last paragraph of the agreement was never executed, but a court of equity in a case like this will treat that as having been done which ought to have been done. We are clear, also, that the transaction between appellee and the Trust Company was not simply a payment of the claim by appellee, but was a purchase thereof. The intention of the parties is made clear by the instrument itself. If it had been the intention of the parties that appellee was simply paying the claims of the Trust Company, they would not have provided in the agreement for a formal assignment of the judgment, but for a satisfaction thereof. This language would entirely negative the idea that the appellee was simply paying the judgment.

[4] It is also expressly stated in the agreement that counsel for

appellee claimed that because of the payment, their client was entitled to be fully subrogated to the rights of the Trust Company under the judgment. The Trust Company did not differ with counsel for appellee upon this subject, except it claimed that there was an issue between the parties as to whether its counsel was entitled to additional counsel fees. When this question was determined by the trial court adversely to the Trust Company, it fully acquiesced in the transaction, at least so far as the record shows.

Counsel for appellant base their contention upon certain language found in the tenth paragraph of the lease between appellee and appellant. That language is as follows:

"It is hereby further covenanted, stipulated, and agreed by and between the parties hereto that the lessor shall, at her option, have the right at all times during said demised term to pay any rates, taxes, assessments, water rates or other charges upon said premises and reversionary interest therein remaining unpaid after the same have become due and payable, and to pay, cancel, and clear off all tax sales, liens, charges, and claims upon or against said demised premises or reversionary interest thereon, and to redeem said premises from the same, or any of them, from time to time, and the amount paid, including reasonable expenses, shall be so much additional rent due from the lessee at the next rent day after any such payment, with interest thereon at the rate of 7 per cent. per annum from the date of the payment thereof by the said lessor until the payment thereof by the said lessee to the said lessor."

Also upon certain language found in the fifth paragraph of the same lease, which language is as follows:

"It is hereby covenanted, stipulated, and agreed by and between the parties hereto that there shall, during said demised term, be no mechanics' liens upon such buildings or improvements which may at any time be put upon or be upon said demised premises, and that in the event there shall be any liens filed thereon, then the lessee must pay off the same, and in the event the same shall not be paid off within thirty (30) days after such liens have been reduced to final judgment and after (30) days' written notice by the said lessor to the lessee, said lessor shall have the right and privilege at her option to pay off the same, or any portion of the same, and the amount so paid, including expenses, shall at the option of the said lessor be so much additional rent due from the said lessee to said lessor at the next rent day after such payment, with interest thereon at the rate of 7 per cent. per annum."

Under this language counsel for appellant contends that appellee was limited so far as the claims represented by the judgment of the Trust Company were concerned to paying them off and adding the amount paid to the amount of the rent due at the next rent day, and that if the rent was not paid appellee was limited to the remedies prescribed by the lease for a forfeiture of the same, and that appellee had no right to purchase an outstanding judgment and proceed to foreclose and thus terminate the lease in a different way than prescribed by the lease itself. We do not think that this contention can prevail. It would seem that the plain words of the language quoted from the lease did not limit appellee to the right to pay off claims and add the amount thereof to the rent due, for the reason that the lease in every instance where the subject is mentioned says it shall be at the option of appellee to do so. This means to do so or not, as she might choose. Appellee was in a position where she was compelled to pay off these

251 F.—55

claims in order to protect her property. It presented a clear case for subrogation.

[5, 6] It is suggested that the purchase of the judgment by appellee operated as a merger. Appellant is only interested in the leasehold estate. There could be no merger as to that. It is also complained that by section 5162, Rev. Laws Okl. 1910, an order of sale could not be issued on the judgment of foreclosure until the expiration of six, months from its date May 8, 1917. We are of the opinion that as there has yet been no sale under the judgment appellant has not been prejudiced, conceding the statute to be applicable.

We see no equity in the contention of appellant, and the decree and order of the trial court is affirmed.